Minshall, C. J.
The original action was commenced by the City of Zanesville against the Zanesville Gas-light Company. The company was chartered by an act of the legisla *46 ture in 1849, to manufacture and sell gas to the city and its citizens ; in the same year an ordinance was passed by the town, now city, of Zanesville, granting the company the use of its streets and alleys, and fixing the maximum price at which gas should be furnished. This provision does not seem to have been regarded by the company or the city, as the company from its organization, supplied gas to the city under agreements with it, made from time to time, at rates sometimes above and sometimes below, the maximum fixed by the ordinance, until in 1884, when, all agreements being at an end, except as to a few out posts, the city, in pursuance of the power conferred by sec. 2478, Rev. Stats., passed an ordinance fixing the price at which the company should furnish gas to the city and private consumers. The company refused to furnish gas to the city at the rates so fixed, claiming that it was not subject to the provisions of the ordinance, and was proceeding to disconnect its pipes from those that supplied the city, when the city commenced its action to restrain the company from so doing, and to require it to furnish gas at the rates fixed by the ordinance. The charter of the company, the ordinance of the town granting the company the use of its streets and alleys, etc., and that of 1884 fixing the price of gas, will be found in the statement of the case of The City of Zanesville v. The Zanesville Gas-light Company, ante. There, in the original action, which was a suit brought by the company against the city, the company sought to restrain the city from interfering with it in disconnecting its pipes from those of the city, the company claiming there, as here, that, having been chartered by the legislature before the adoption of the present constitution of the state, it is not subject to the ordinance of the city fixing the price at which gas should be furnished. On appeal to the district court, the decree was so entered as to require the city to pay the price fixed by the company or be restrained from such interference. Though not in these words such was the legal effect of the decree. This judgment, having been rendered in the district court prior to the hearing of the case of the city against the company in the common pleas, was there *47 pleaded as a bar to the action of the city. . The common pleas rendered judgment against the city; an appeal was taken by it to the circuit court, where, on the pleadings as made up in the common pleas, that court rendered judgment in favor of the city, requiring the company to furnish gas to the city at the rates fixed by the ordinance, so long as it should continue to exercise its franchises within the city.
A number of reasons are assigned why this judgment should be reversed and the petition of the plaintiff below dismissed:
1. That the suit is in the nature of a quo warranto, and that, therefore, the court in which it was commenced had no jurisdiction.
2. That the company is not subject to the ordinance of the city fixing the price of gas.
3. That the real controversy — the applicability of the ordinance to the company, was determined in the suit of the company against the city, and is, therefore, res adjudieata.
4. That the company cannot be compelled by injunction to furnish gas at the rates fixed by the ordinance.
1. As to the first proposition, the argument in support of it seems to assume, that no power or franchise claimed by a corporation can be questioned, except in a proceeding in quo warranto. This is certainly erroneous. Zanesville v. Gas Light Co., supra. That a judgment of ouster cannot be pronounced in any other proceeding is true; but a judgment of ouster in a proceeding in quo warranto, commenced on behalf of the state, is one thing, and a judgment in an action between a company and a private person brought to assert some proprietary claim or alleged obligation of the one to the other, is a very different thing, although the latter judgment may rest upon a conclusion drawn by the court that, as a matter of law, some power or franchise claimed by the company is not possessed by it. In such judgment the question is simply passed on to determine the rights and obligations of the parties involved in the particular litigation. But it is not available as an adjudication in favor of, or against, other persons; and the question as to the disputed *48 franchise may be made as often as it arises in litigation between the company and third persons. Not so, however, in a proceeding in quo warranto. The purpose and object of this proceeding is to determine the question once and for all; and by a judgment that shall be binding upon all. It is not a judgment based upon a wrong of the company against any particular individual, but on a wrong as against the entire public — the wrong of usurping the prerogatives of the people, and, if found guilty, the judgment is one of ouster in favor of the entire public. There are evident reasons for limiting a jurisdiction so drastic in its consequences to courts composed of more than one judge, that do not apply to suits of a private character and that can only affect the parties to them, whatever may be the judgment.
It is neither extraordinary nor unusual to question the powers of a corporation where they are involved in litigation between it and a private person. The franchise to be a corporation, of the power of eminent domain, or any right or privilege that a corporation may claim, may be, and frequently is, questioned by a private individual, whenever involved in litigation between it and the individual. “ It is well settled,” says Mr. Morawetz, “ that a court of chancery has jurisdiction to grant equitable relief against a corporation at the suit of an individual, whenever a sufficient case for relief is shown, upon the ordinary principles of equity jurisprudence; and the fact that the act of the corporation against which relief is sought involves an unauthorized exercise of corporate power, or other breach of the law, is wholly immaterial under these circumstances.” Mora. Priv. Corp. § 1042.
The right of any one involved in litigation with a corpora^ tion to question its claims, results as a corollary from the capacity confenud on it to sue and be sued. Such capacity does not carry with it the franchise of a privileged suitor. The capacity to sue and be sued implies power in the opposite party to question the claims of the one clothed with such capacity. If it were otherwise, a private individual would be at great disadvantage in litigation with a corpora *49 tion: As a proceeding in quo warranto must be brought in the name of the state by the attorney general, or some one else authorized to represent the state, and, as it may not always be convenient, nor possible, for the individual to induce the proper officer to commence the proceeding, he might be compelled to submit to a usurpation by a corporation, however wrongful, and whatever the injury as to him might be.
The suit below, brought by the city solicitor in the name of the city under the provisions of section 1777 as amended in 1884, was a suit brought for the city in its private capacity, asserting its own right to be furnished with gas by the company under the obligation imposed by the ordinance of the city council, and asking that the company be required to perform that obligation. The remedy sought did not require a judgment of ouster, and there was, therefore, no impediment, on the ground of jurisdiction, to its being brought in the common pleas.
2. The second proposition has been already decided against the company in Zanesville v. The Gas-light Co. ante. It was there determined that the city council had power to pass the ordinance regulating the price of gas, and that the company is subject to its provisions, although it was organized before the adoption of our present constitution.
3. The third proposition is, however, that the question was determined in favor of the company in the district court, in the suit of the company against the city, and is, therefore, res adjudicata.
The suit of the company against the city was commenced May 31, 1884, and was decided in its favor in the district court, October 3,1884. The suit of the city was commenced the day following that of the company, but was not heard in the common pleas until after the suit brought by the company had been determined in the district court; and it is this judgment that was then, and is now, relied on by the company as an adjudication in its favor, conclusive on the question involved. It will be seen that both suits were practically pending from the same time, and whilst each *50 was prosecuted for a different purpose by the party bringing it, both turned upon substantially the same question— the power of the city council by ordinance to fix the price at which the company should furnish gas. So that each turning upon the same question of law, no good reason is perceived why a judgment in either, remaining unreversed, should not be regarded as conclusive upon the rights of the parties in the other suit. But the judgment rendered in favor of the company by the district court, has been reversed by this court, and the rights of the parties now stand as if it had never been rendered. Hence, if the city had the right to prosecute the suit commenced in its name by its solicitor, the judgment that was rendered against it in the district court, cannot now stand in the way of any relief to which it is entitled upon the facts of its own case. And this brings us to the question involved in the fourth proposition.
4. By § 1777 Revised Statutes, as amended April 14,1884*. it is made the duty of. the city solicitor, “whenever an obligation or contract granting a right or easement or creating á public duty is being evaded or violated,” to apply “ for the forfeiture or specific performance of the same as the case may require.” Although the contrary is strenuously maintained in argument by counsel for the company, the case made by the city seems plainly to fall within the provisions of this, statute. The company was certainly under an obligation to manufacture and sell gas to the city of Zanesville and its citizens, by accepting and exercising the franchises granted it by its charter and the ordinance of the city granting it the use of its streets and alleys for the purpose of distributing gas to its consumers. This was not a duty arising from “an office, trust or station,” but an obligation created by contract, which it was under a legal duty, and might be compelled, to perform, as any other contract under like circumstances. The section as amended did not create for the city any new right; it simple authorizes the city solicitor on behalf of the city to invoke a jurisdiction not infrequently exercised by courts of equity in such cases. See Mora. Priv. Corp. § 1043 and cases cited. *51 The contract was subject to a provision imported by law, that the company would furnish the gas at such rates as the city, when empowered by the legislature, should by ordinance determine. The power may be abused, and we doubt not, but that, a remedy would be furnished by the courts in such case if shown to have resulted from fraud or any wrong motive. But it is certainly no more liable to be abused than if it were reposed in the company. There is no complaint in this case of any fraud in the adoption of the ordinance. The city was entitled to a remedy. As the obligation is one that arose from contract, it could not be enforced by mandamus. State ex rel. v. Turnpike Company, 16 Ohio St. 308; and, as it would hardly be claimed that a suit for damages would furnish adequate relief in such ease, it follows that it was entitled to a decree of specific performance. This was awarded in the form of a mandatory injunction. The decree is guarded: It does not compel the company, without limitation, to furnish gas, but only so long as “ it continues to exercise its franchises within the city of Zanesville.” It might have been couched in a negative form by restraining it from disconnecting its pipes from those of the city so long as it continued to exercise its franchises in the city — and which would have been more in accordance with the practice by which mandatory injunctions are made operative. Pom. Eq. Juris. § 1359, and note 2. But as, in this case, the result would be the same, we see no need of modifying the decree.

Judgment affirmed.